## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| CLUVERIUS JENKINS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv705-JRS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Cluverius Jenkins, III ("Plaintiff") had been trying unsuccessfully to secure Social Security Disability ("DIB") for his medical impairments since September 2004. Tragically, he died from his impairments on October 20, 2009, while his most recent application was still pending. He is survived by his wife and three children, who pursue the claim on his behalf. They seek a retroactive award of the benefits Plaintiff would have received and possibly survivor benefits.

Plaintiff's initial claim was denied and he failed to appeal the decision. Plaintiff applied again two years later and was denied DIB for a second time by an administrative law judge ("ALJ"). Plaintiff's request for review of the ALJ's second denial by the Appeals Council ("AC") was granted. The AC vacated the second denial and remanded to the ALJ to resolve a number of issues. One issue, which lies at the heart of this appeal, is whether the ALJ erred in finding that, based on Plaintiff's age, education, work experience, and residual functional

capacity ("RFC")[1], Plaintiff was employable in the national economy and, therefore, not disabled under the Social Security Act (the "Act").

On remand, the ALJ upheld its original RFC determination — that Plaintiff had the capacity to perform light work[2] that did not involve stooping or bending — and for the third time denied Plaintiff's claim to benefits. Plaintiff appealed to the AC for the second time, arguing that the ALJ erred in finding that he was employable in the national economy with the RFC limitation of no stooping or bending. The AC agreed that Plaintiff would not be employable with no stooping or bending limitation. However, the AC also determined that the ALJ erred in its RFC determination, finding that the medical evidence in the record indicated that Plaintiff could occasionally stoop. Because Plaintiff could occasionally stoop, he was employable in the national economy and, therefore, not disabled under the Act. The AC notified Plaintiff of its intent to deny his DIB claim and gave him the opportunity to submit additional evidence or to request a hearing within a thirty (30) day period. Plaintiff failed to do so. Accordingly, the AC issued its final decision, denying Plaintiff's claim for benefits.

----

[1] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

[2] Under the Code of Federal Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Plaintiff now challenges the AC's decision on appeal, principally arguing that the AC changed his RFC without affording him the opportunity to present some evidence as to its effect. In doing so, Plaintiff argues that the AC violated his due process rights under the Fifth Amendment of the United States Constitution. The Court disagrees because the AC did, in fact, invite Plaintiff to offer additional evidence and argument regarding the effect of the new RFC.

This Court has review pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment which are now ripe.[3] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment and motion to remand (ECF No. 18) be DENIED; that Defendant's motion for summary judgment (ECF No. 20) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff alleges that when the AC changed the RFC to include occasional stooping and bending, it "effectively denied [him] due process of law to present evidence and address the issues required for disability because throughout this case, all the prior decisions until the decision of the AC had consistently held that [he] had an RFC which included light work with no *stooping* or *bending*." (Mem. of Point and Authorities in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 23 (emphasis in original).) For this reason, a careful and detailed examination of the

---

[3] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

procedural background of Plaintiff's case is necessary, including a summary of the relevant

medical evidence that was relied upon at each level of review.

## A.    Plaintiff's First Application

Plaintiff twice applied for benefits.  He initially protectively filed for DIB and SSI on

September 30, 2004, claiming disability due to coronary artery disease, hypertension,[4] obesity,

varicose veins of both legs, and post-operative surgery of the left knee, with an alleged onset date

of August 9, 2003.  (R. at 79-81.)  The Social Security Administration ("SSA") denied Plaintiff's

claims initially and on reconsideration.[5]  (R. at 79.)  Plaintiff filed a written request for a hearing

before an ALJ and, on August 14, 2006, he testified before ALJ Timothy C. Pace ("ALJ Pace").

(R. at 79.)

In his October 27, 2006 opinion, ALJ Pace found that Plaintiff met the insured status

requirements of the Act through December 31, 2006 — Plaintiff's date last insured ("DLI").  (R.

at 81.)  ALJ Pace also found that Plaintiff suffered from the severe impairments which form the

basis of his disability claim.  (R. at 81.)  In examining the entire record, ALJ Pace concluded that

Plaintiff had a RFC to perform the full range of light work, except "[h]e cannot tolerate tasks

requiring stooping, squatting, crawling, or kneeling due to his knee problems."  (R. at 82.)  In

making this finding, ALJ Pace found that, while Plaintiff's medically determinable impairments

could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning

---

[4] Hypertension means "high arterial blood pressure." *Dorland's Illustrated Medical Dictionary* 896 (31st ed. 2007) [hereinafter *Dorland's*].

[5] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. at 83.)

Specifically, ALJ Pace found that nothing in the medical record showed that Plaintiff experienced complications stemming from his coronary artery disease. (R. at 83.) Furthermore, Plaintiff was still able to coach football and attend church activities even though he was overweight and had to elevate his legs several times a day. (R. at 83.) While Plaintiff claimed that his legs were his worst problem, causing him pain that ranked a seven or eight on a scale from one to ten, ALJ Pace emphasized the conservative nature of the pain treatment. Specifically, Plaintiff's sole pain medication was ibuprofen and he wore his compression stockings only at night — both indications of relatively conservative treatment. (R. at 83.) Finally, according to Plaintiff's treating physician, Damian Covington, M.D. ("Dr. Covington"), Plaintiff denied any headache, shortness of breath, nausea, vomiting, diarrhea, or change in bowel or bladder habits. (R. at 83.)

ALJ Pace next determined that, because of Plaintiff's knee problems and nonexertional limitations, he was precluded from performing his previous work as a landscaper and cook. (R. at 84.) Then, considering Plaintiff's age of fifty-one (51), high school education, and RFC, ALJ Pace found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. at 84.) Specifically, Plaintiff could perform the jobs of cashier, general office router, or sales attendant/greeter. (R. at 85.) Therefore, Plaintiff was not disabled under the Act. (R. at 85.) ALJ Pace's decision was not appealed. (R. at 64, 74.) Because Plaintiff failed to exhaust his administrative remedies, the agency never issued a judicially reviewable final decision on Plaintiff's September 30, 2004 application. (R. at 64, 74.)

**B.      Plaintiff's Second Application**

Plaintiff protectively filed for DIB for the second time on May 20, 2008, claiming

disability due to coronary artery disease and varicose veins in both legs, with an alleged onset

date of January 1, 2006.  (R. at 94, 97.)  Once again, those claims were denied.  (R. at 94.)

Plaintiff was scheduled to testify before an ALJ on March 20, 2009.  (R. at 72-78.)  He was in

the hospital and therefore unable to attend the hearing, but counsel appeared on his behalf.  (R. at

74.)  At this hearing, the ALJ and Plaintiff's counsel narrowed the time frame for which Plaintiff

would be considered for DIB to the period beginning on October 28, 2006, the day after the first

ALJ decision, and ending on December 31, 2006 — Plaintiff's DLI.  (R. at 65, 282.)  Beginning

January 1, 2006, Plaintiff was uninsured, and therefore ineligible to receive DIB.[6]  (R. at 282.)  A

hearing was then rescheduled for June 24, 2009, at which time Plaintiff, accompanied by

counsel, appeared before ALJ Drew A. Swank ("ALJ Swank").  (R. at 62-71.)

**1.      Administrative Law Judge Swank's August 2009 Opinion**

On August 25, 2009, ALJ Swank issued a decision denying Plaintiff's second claim for

DIB.  (R. at 94-102.)  In his opinion, ALJ Swank adopted many of the findings contained in ALJ

Pace's 2006 opinion, with some modifications and exceptions.  First, ALJ Swank concurred with

ALJ Pace that Plaintiff had the following severe impairments:  coronary artery disease, obesity,

varicose veins, and minimal osteoarthritis[7] of the left knee.  (R. at 97.)  However, ALJ Swank

---

[6] To qualify for DIB under the Act, a claimant must have coverage, meaning be fully
insured, at the time of disability.  *See* 42 U.S.C. § 423(a); 20 C.F.R. §§ 401.101(a), 404.131(a).
A worsened condition or a new impairment arising after the DLI cannot be a basis for remand or
an award of disability benefits.  *See Matullo v. Bowen*, 926 F.2d 240, 246 (3d Cir. 1990).

[7] Osteoarthritis means "a noninflammatory degenerative joint disease seen mainly in
older persons, characterized by degeneration of articular cartilage, hypertrophy of bone at the
margins, and changes in the synovial membrane.  It is accompanied by pain, usually after
prolonged activity, and stiffness, particularly in the morning." *Dorland's, supra* note 4, at 1344.

found that Plaintiff's hypertension did not constitute a "severe impairment" under the SSA regulations, because it caused no vocational limitations. (R. at 98.)

Next, ALJ Swank adopted, verbatim, ALJ Pace's RFC determination of light work, with the limitation of no stooping or bending, noting that Plaintiff had received no additional medical treatment between the date of ALJ Pace's decision and Plaintiff's DLI. (R. at 99.) Additionally, ALJ Swank found that the medical evidence in the record did not support a finding of disabled before Plaintiff's DLI. (R. at 99.) An x-ray of Plaintiff's left knee taken in June 2006 revealed only minimal osteoarthritis. (R. at 100, 479.) Plaintiff's only other treatment during that time was a follow-up appointment with Dr. Covington on October 5, 2006, which Plaintiff arranged to have his lost prescriptions replaced. (R. at 100, 477.)

ALJ Swank also considered the medical evidence in the record after Plaintiff's DLI and concluded that it too supported the RFC determination. (R. at 100.) He emphasized that Plaintiff did not receive treatment again until April 2008 for arthritic pain in his upper right extremity and right knee, and for exertional shortness of breath. (R. at 100, 458.) ALJ Swank also considered the results of Dr. Nancy Powell's ("Dr. Powell") July 2008 consultative examination of Plaintiff. ALJ Swank concluded that Dr. Powell's findings were "essentially benign." (R. at 100.) Plaintiff had normal muscle strength and range of motion. (R. at 100, 490.) While Plaintiff had trace edema in his ankles and feet, Dr. Powell opined that Plaintiff could perform light work. (R. at 100, 490-91.) Finally, ALJ Swank found that Plaintiff's daily activities also supported the light work RFC determination. (R. at 100-01.)

Then, considering Plaintiff age of fifty-four (54), high school education, and RFC for light work, ALJ Swank found that jobs existed in significant numbers in the national economy which Plaintiff could perform, thus rendering Plaintiff "not disabled" under the Act. (R. at 102.)

Plaintiff requested review of ALJ Swank's decision to the AC, asking that his case be classified as an urgent TERI case pursuant to HALLEX I-3-1-51.[8] (R. at 188-90.) In the appeal letter, Plaintiff argued that ALJ Swank had violated 20 C.F.R. § 404.1563(h) by applying the age category mechanically in a borderline situation, where Plaintiff was two months shy from turning fifty-five (55) years old, and would be considered disabled pursuant to the Medical-Vocational Guidelines ("Grid") Rule 202.04.[9] (R. at 189.)

### 2.  Appeals Council's 2009 Decision

On September 22, 2009, the AC denied Plaintiff's request for designation as a TERI case, but granted review of ALJ Swank's decision. (R. at 105-08.) The AC remanded the case to the ALJ to resolve the following issues: (1) obtain evidence from a medical expert ("ME") clarifying the nature of Plaintiff's impairments; (2) give further consideration to Plaintiff's maximum RFC during the entire period, providing specific references to the record and to require Dr. Covington to provide additional evidence or clarification of his medical opinion regarding Plaintiff's limitations; and, (3) obtain medical evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. (R. at 107.) Pursuant to these orders, a hearing was held before ALJ Swank on December 9, 2009, in which the ALJ heard testimony from a ME and VE, and also considered an opinion letter submitted by Dr. Covington. (R. at 18-19.) Unfortunately, Plaintiff died on October 20, 2009

---

[3] In his letter to the AC, dated September 14, 2009, Plaintiff's counsel explained that, as of that date, Plaintiff was critically ill in the hospital, in need of constant medical care and financial assistance. (R. at 188.) HALLEX I-1-3-51 provides that a critical case involving a terminal illness, for example, where the plaintiff is receiving in-hospice care while his judicial matter is pending, may be designated a "TERI" case, to ensure that it receives immediate attention.

[9] The Grid Rules are an administrative devise used to determine the existence of other work in the national economy that a DIB claimant can perform given the claimant's vocational background, education, and specific functional limitations.

from his medical condition and was unable to attend the hearing. (R. at 219-25.)  However, a

proper substitution of party was made in the record, and Plaintiff's widow, Renita H. Jenkins,

pursued the DIB claim on her husband's behalf.  (R. at 224.)

### 3.    Administrative Law Judge Swank's March 2010 Decision

On March 26, 2010, ALJ Swank denied Plaintiff's claim for DIB a second time.  (R. at

109-22.)  In rendering this decision, ALJ Swank adopted all of the findings made in his August

2009 opinion with one exception — in making the RFC determination, ALJ Swank evaluated the

newly obtained evidence from the ME, VE, and Dr. Covington.  The ME, Charles Cooke, M.D.

("Dr. Cooke"), testified that the medical record did not reflect pulmonary artery enlargement and

that he could find no evidence that Plaintiff had pulmonary artery enlargement before the DLI.

(R. at 24, 118.)    Dr. Cooke also opined that there was no evidence to support the opinion of Dr.

Covington, contained in a letter dated May 26, 2009, that Plaintiff's impairments would limit

him to standing less than one hour per day.  (R. at 31, 118.)

ALJ Swank also considered the letter submitted by VE Barry S. Hensley, Ed.D. ("Dr.

Hensley"), in which Dr. Hensley opined that the jobs listed by the VE at the hearing could not be

performed without stooping.  (R. at 119, 432.)  It was also Dr. Hensley's opinion that the job

descriptions in the Dictionary of Occupational Titles ("DOT") were antiquated, and that almost

any job would require occasional stooping.  (R. at 119, 432.)  In response, ALJ Swank stated that

the accuracy of the DOT was not within the purview of his decision, and that the DOT was the

accepted reference for jobs until the SSA regulations were changed.  (R. at 119.)

Finally, ALJ Swank considered Dr. Covington's May 2009 letter in which Dr. Covington

opined that Plaintiff would have been limited to a job where he could primarily sit and

intermittently elevate his legs.  (R. at 119, 759.)  He also stated that Plaintiff's knee pain and

swelling would limit him to standing less than one hour overall in an eight-hour workday. (R. at 119, 759.) Dr. Covington also noted that Plaintiff's condition seemed to be worsening during the time he treated Plaintiff. (R. at 119.) ALJ Swank assigned this opinion "very limited weight," because it was inconsistent with the other substantial evidence on record and was written over two and a half years after Dr. Covington last treated Plaintiff. (R. at 119.) Again, ALJ Swank applied Grid Rule 202.14 and found that Plaintiff was not disabled under the Act. (R. at 121.) Plaintiff requested review by the AC for the second time.

### 4.    Appeals Council's 2010 Decision

On May 7, 2010, the AC notified Plaintiff that his request for review had been granted. (R. at 129-33.) The notice explained that the AC planned to find that Plaintiff was not disabled as of his DLI, because the record failed to include clinical findings consistent with a finding that Plaintiff had a complete inability to stoop as established by a medically acceptable source within eighteen (18) months after the DLI (December 31, 2006). (R. at 131.) Based on this finding and the abovementioned medical evidence, the AC informed Plaintiff that they intended to adopt the ALJ's RFC, with the exception that Plaintiff retained at least an occasional ability to stoop. (R. at 131.) The AC also notified Plaintiff that it intended to adopt the ALJ's finding that other jobs existed within the national economy that Plaintiff could have performed between October 28, 2006 and December 31, 2006. (R. at 131.) Significantly, the notice informed Plaintiff that he could submit additional evidence or request to appear before the AC within thirty (30) days of the date of the notice. (R. at 132.) However, if the AC did not hear from him within thirty (30) days, it would issue a final decision. (R. at 132.) The AC did not hear from Plaintiff and, on September 7, 2010, it issued a Notice of Appeals Council Decision, adopting its May 7, 2010

proposals. (R. at 1-8.)  This decision became the final decision of the Commissioner, subject to

judicial review by this Court.  (R. at 1-8.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by

substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

determining whether the Commissioner's decision was supported by substantial evidence on the

record and whether the proper legal standards were applied in evaluating the evidence. *Hancock*

*v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650,

653 (4th Cir. 2005)).  Substantial evidence is more than a scintilla, less than a preponderance,

and is the kind of relevant evidence a reasonable mind could accept as adequate to support a

conclusion.  *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To find whether substantial evidence exists, the Court is required to examine the record

as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472

(citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th

Cir. 2001) (quoting *Craig*, 76 F.3d at 589).  In considering the decision of the Commissioner

based on the record as a whole, the Court must "take into account whatever in the record fairly

detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks

omitted)).  The Commissioner's findings as to any fact, if the findings are supported by

11

substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation

omitted). While the standard is high, if the ALJ's determination is not supported by substantial

evidence on the record, or if the ALJ has made an error of law, the district court must reverse the

decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine

if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177.

The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court

must examine on appeal to determine whether the correct legal standards were applied, and

whether the resulting decision of the Commissioner is supported by substantial evidence on the

record.

The first step in the sequence is to determine whether the claimant was working at the

time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[10] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the

analysis ends and the claimant must be found "not disabled," regardless of any medical

condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the

analysis requires him to prove that he has "a severe impairment . . . or combination of

impairments which significantly limit[s] [his] physical or mental ability to do basic work

activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe

---

[10] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R.
Substantial work activity is "work activity that involves doing significant physical or mental
activities. Your work may be substantial even if it is done on a part-time basis or if you do less,
get paid less, or have less responsibility than when you worked before." 20 C.F.R. §
404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a
profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks
or hobbies, therapy or school attendance, and the like, are not generally considered substantial
gainful activities. 20 C.F.R. § 404.1572(c).

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve (12) months or results in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[11] based on an assessment of the claimant's RFC and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the

---

[11] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The AC found at step one that Plaintiff had not engaged in SGA during the time period beginning on October 28, 2006, and ending on December 31, 2006. (R. at 7.) At steps two and three, the AC found that Plaintiff had the severe impairments of coronary artery disease, obesity, varicose veins of the lower extremities, and minimal osteoarthritis of the left knee, but that these impairments did not meet or equal any listing in 20 C.F.R. pt. 404, subpt. P, app. 1, as required for the award of benefits at that stage. (R. at 7.) The AC next determined that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), except that he could not work around hazards such as unprotected heights or dangerous moving machinery. (R. at 7.) Additionally, the AC found that Plaintiff could occasionally stoop, squat, crawl, and kneel. The AC also found that Plaintiff was able to understand, remember, and carry out simple instructions, but must have a position requiring little decision-making. (R. at 7.)

The AC then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a landscaper, because the VE indicated that such work required heavy exertion. (R. at 6-7.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the AC nevertheless found that there are other occupations which exist in significant

14

numbers in the national economy that Plaintiff could have performed between October 28, 2006 and December 31, 2006. (R. at 7.) Accordingly, the AC concluded that Plaintiff was not disabled and was employable during this time frame such that he was not entitled to benefits. (R. at 7.)

Plaintiff moves for a finding that he is entitled to benefits during the period beginning October 28, 2006, and ending December 31, 2006, as a matter of law; or, in the alternative, he seeks remand for additional administrative proceedings. (Pl.'s Mem. at 31.) In support of his position, Plaintiff argues: (1) the AC's change to the ALJ's RFC deprived him of due process of law in violation of the Fifth Amendment of the United States Constitution; (2) the ALJ committed legal error by failing to accept the testimony of the VEs that there were no jobs in the national economy that Plaintiff could have performed; and, (3) the ALJ violated 20 C.F.R. § 404.1563(b) by applying the age category mechanically in a borderline situation when Plaintiff was two months away from turning fifty-five (55) years old, which would result in a finding of "disabled" under Grid Rule 202.04. (Pl.'s Mem. at 21-31.)

Defendant argues in opposition that the final decision of the Commissioner should be affirmed on the grounds that: (1) the AC's adjustment of Plaintiff's RFC so as to include occasional stooping was within the AC's judicial discretion and is supported by substantial evidence in the record; (2) the VE testimony upon which Plaintiff relies is based on a faulty RFC; and, (3) the Commissioner complied with SSR 83-10 in applying the age categories in this case. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof and in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") at 12-15.)

15

A.    **The Appeals Council's Decision Did Not Deny Plaintiff Due Process**

Plaintiff contends that the AC's adjustment of the ALJ's RFC so as to include occasional stooping is "irrational, contrary to all evidence in the record . . . and precludes Plaintiff from due process of law by not addressing this issue during the evidentiary hearings to provide an opportunity for argument." (Pl.'s Mem. at 27.)  Specifically, Plaintiff argues that he should have had the opportunity to "enter[] evidence or present[] argument to the AC regarding the accuracy of the ALJ's RFC or the effects of the new RFC," and to cross-examine the VEs as to the effect of the new RFC on Plaintiff. (Pl.'s Mem. at 26.)  As such, he asserts that the AC's May 2010 decision deprived him of his property interest in the social security funds to which he has contributed without due process of law. (Pl.'s Mem. at 21, 27.)  Finally, he argues that the accurateness of the ALJ's RFC determination was not the issue on appeal; rather, the only issue before the AC was whether the ALJ's conclusion that there were significant jobs Plaintiff could have performed in the national economy — despite his "no stooping" limitation — was in error. (Pl.'s Mem. at 25-26.)

1.    **The Appeals Council's decision is the final decision of the Commissioner**

Before proceeding to the merits of Plaintiff's due process claim, it is important to clarify at the outset that the final decision of the Commissioner in this case is the decision of the AC, not that of the ALJ.  Plaintiff assigns error to the decisions of both the AC and the ALJ. (Pl.'s Mem. at 21, 27, 29.)  However, both decisions cannot represent the final decision of the Commissioner.  While the Act does not define "final decision," the corresponding SSA regulations "provide that, if the [AC] grants review of a claim, then the decision that the [AC] issues is the Commissioner's final decision. But if . . . the [AC] denies request for review, the ALJ's opinion becomes the final decision [of the Commissioner]." *Sims v. Apfel*, 530 U.S. 103,

106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a) (1999))
(noting that the Act leaves defining the term "final decision" to the SSA through its regulations);
*see also* 42 U.S.C. § 405(a). In this case, the AC granted review of Plaintiff's claim. (R. at 129.)
Therefore, the AC's decision represents the final decision of the Commissioner in this case and
this Court's review is limited to that decision. *See* 20 C.F.R. 422.210 ("A claimant may obtain
judicial review of a decision by…the [AC] when that is the final decision of the Commissioner.")

### 2.     Plaintiff had an Opportunity to be Heard

In turning to the substance of Plaintiff's due process claim, no violation has occurred in
this case. Plaintiff grounds his claim for denial of due process in the fact that the AC made a
"last minute change" to Plaintiff's RFC, which effectively precluded him from "entering
evidence or presenting argument to the AC regarding the accurateness of the ALJ's RFC or the
effects of this new RFC." (Pl.'s Mem. at 26.) However, Plaintiff's rendition of the facts does
not comport with the record. Indeed, on May 7, 2010, the AC notified Plaintiff (and Plaintiff's
counsel) that it planned to adopt the ALJ's RFC with the exception that Plaintiff retained at least
an occasional ability to stoop. (R. at 131.) The notice was received by Plaintiff two (2) months
before the AC issued its final decision. (R. at 129.) The notice explained that the record failed
to include clinical findings made by a medically acceptable source within eighteen (18) months
after Plaintiff's DLI that were consistent with a finding that Plaintiff had no ability to stoop. (R.
at 131.) The notice also stated that, with this change to the RFC, other jobs existed within the
national economy that Plaintiff could perform and, consequently, his claim for benefits would be
denied. (R. at 129-33.) Thus, Plaintiff was given notice before the decision was final.

Furthermore, the notice specifically informed Plaintiff and Plaintiff's counsel that they
could "send more evidence or a statement about the facts and the law in [Plaintiff's] case within

17

30 days of the date of this letter." (R. at 131.)  Additionally, Plaintiff could "ask for an appearance before the [AC] to tell [them] about [his] case." (R. at 131.)  Finally, the AC notified Plaintiff that if they did not hear from him within thirty (30) days, they would assume that he did not want to send more information or appear before the AC, and that they would issue a decision at that time. (R. at 132.)  Plaintiff took no further action.[12]  (R. at 4.)  Accordingly, the AC issued a final decision on September 7, 2010, denying Plaintiff's claim for benefits during the period between October 28, 2006, and December 31, 2006. (R. at 7-8.)  Contrary to his assertions here, Plaintiff was given an opportunity to be heard, thus satisfying the strictures of due process. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976) (finding that, in the context of an administrative ruling by the Social Security Administration, notice and an opportunity to challenge satisfies due process requirements).  The Court recommends that the AC's decision be affirmed on this basis.

### 3.    Substantial Evidence Supports the Appeals Council's RFC Determination

The AC adopted the ALJ's RFC determination that, before Plaintiff's DLI, he had a RFC to perform light work, except that he could occasionally stoop, squat, crawl, and kneel. (R. at 5.)  The change in the ALJ's RFC to include occasional stooping is supported by substantial evidence in the record.  The only treatment notes in the record on or before Plaintiff's DLI came from Dr. Covington, Plaintiff's primary care physician. (R. at 130.)  Dr. Covington's treatment notes reveal that, as of June 28, 2006, Plaintiff had "minimal osteoarthritis in his left knee." (R. at 479.)  While Dr. Covington's findings also identified occasional mild swelling of the left knee joint, there is no indication of instability of the left knee joint. (R. at 479.)  Dr. Covington's

---

[12] The AC did consider the contentions submitted by Plaintiff's representative on April 2, 2010, before the AC sent its notice on May 7, 2010. (R. at 4.)  These contentions included the opinions of VEs Dr. Hensley and Robert Lester that Plaintiff could not perform the fundamental requirements for light work. (R. at 10.)

18

findings indicate no more than "trace" non-pitting edema of the lower extremities. (R. at 465-85.) There was no indication from the record that Plaintiff complained of, or experienced, any ongoing pain or functional limitations associated with spinal, right knee, or bilateral hip impairment. (R. at 465-84.)

Plaintiff was not treated again until April 2008, over eighteen (18) months after his DLI. (R.at 458.) As of July 2008, Plaintiff retained normal range of motion of cervical and lumbar spine, hips, knees and ankles. (R. at 490.) Pursuant to the AC's orders, Dr. Covington submitted a letter dated May 26, 2009, opining that, when he had previously treated Plaintiff in 2005-2006, Plaintiff would have been able to stand "less than 1 hour each day." (R. at 759.) But, there is no indication from the record that Dr. Covington recommended that Plaintiff periodically refrain from elevating his legs, nor does the record contain any indication that Dr. Covington recommended limited walking. Furthermore, Dr. Cooke, an independent ME, testified that there was no support in the medical record to support Dr. Covington's opinion letter. (R. at 24.) Also conflicting with Dr. Covington's opinion is the fact that Plaintiff worked as a laborer in March and April of 2007, which required a great deal of standing. (R. at 288.) There was no additional evidence sought by Plaintiff between the first ALJ decision on October 27, 2006 and his DLI of December 31, 2006. (R. at 118.) This is inconsistent with Plaintiff's testimony in which he stated that his condition worsened between 2006 and 2007. (R. at 118.)

4.      **Appeals Council Properly Exercised Discretion in Changing the RFC**

The SSA regulations provide that the AC "will review a case where: (1) [t]here appears to be an abuse of discretion by the [ALJ]; (2) [t]here is an error of law; (3) [t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or, (4) [t]here is a broad policy or procedural issue that may affect the general public interest." 20

C.F.R. § 404.970(a). In deciding whether to grant review, the AC must "evaluate the entire record including the new and material evidence submitted as it relates to the period on or before the date of the [ALJ] hearing decision." *Hollar v. Apfel*, 1998 U.S. Dist. LEXIS 22475, at *4 (W.D.N.C. Sept. 16, 1998). After reviewing the entire record in Plaintiff's case, the AC granted review of the ALJ's decision on the grounds that it was not supported by substantial evidence. (R. at 129.) Specifically, the AC found that there was no evidence in the record to support the ALJ's finding that Plaintiff was unable to stoop. (R. at 130.) Accordingly, the AC modified the ALJ's RFC determination to reflect this finding. (R. at 5.)

The clear precedent of this circuit dictates that it is within the AC's discretion on review to reach conclusions differing from those of the ALJ. *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing *Parris v. Heckler*, 733 F.2d 324, 326 (4th Cir. 1984)). Furthermore, deference must be given to the AC, rather than the ALJ, where the findings of the AC are supported by substantial evidence. *Id.* (citing *Parris*, 733 F.2d 324; *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir. 1984)). The AC is "entitled to this deference whether its review of the ALJ decision was *de novo* or on the record." *Id.* Because the AC's RFC determination is supported by substantial evidence, it must be affirmed.

**B.      The Administrative Law Judge's Reliance on Vocational Expert Testimony**

Plaintiff states that a "pivotal issue" in this case is whether jobs existed in the national economy in significant numbers that Plaintiff could have performed "with limitations of no stooping, squatting, crawling and or kneeling." (Pl.'s Mem. at 27-28.) He alleges that the ALJ "completely ignored" the VE interrogatories on this very issue. (Pl.'s Mem. at 28.) Indeed, VE Dr. Hensley found that there would be "no jobs available" to someone with Plaintiff's limitations and that, in his opinion, Plaintiff was disabled at least as of October 2006. (R. at 227.) In

response to Plaintiff's interrogatories submitted on December 14, 2009, Dr. Hensley found that three jobs existed in the national economy that Plaintiff might be able to perform — a cashier, a small parts assembler, and a marker — but that all of these jobs required stooping. (R. at 432.) Interrogatories were also completed by Robert W. Lester, M.S. ("Mr. Lester"). (R. at 435-38.) Mr. Lester found that "[w]hile the DOT, COJ and RHAJ all indicate that bending is 'not present' in the position of Cashier II, Small Products Assembler and Marker, following my labor market research, it is my opinion that 'Some Stooping' (bending at the waist) is required to do almost any kind of work." (R. at 440.)

While Plaintiff correctly asserts that "[b]oth VEs clearly opined that a person with [his] limitations of no bending or stopping could not obtain employment," this argument is immaterial to the outcome of Plaintiff's case for two reasons: (1) the AC's decision, as the final decision of the Commissioner, is the decision to be reviewed by this Court, not that of the ALJ; and, (2) the VE testimony was based on a faulty hypothetical.

As explained in Section IV(A)(1), *infra*, in granting review of Plaintiff's case, the AC's decision became the final decision of the Commissioner and is, therefore, the decision under review. Any error made by the ALJ below is no longer relevant, because it has been superseded by the AC's decision.

Moreover, the VE testimony is not controlling in this case, because it is based on a faulty hypothetical. Based on his RFC determination, ALJ Swank told the VEs that Plaintiff "*cannot stoop*, squat, crawl and/or kneel." (R. at 435 (emphasis added).) On appeal, however, the AC rejected ALJ Swank's "no stooping" RFC limitation, because it was not supported by the medical evidence on record. (R. at 5.) Instead, the AC found that Plaintiff had the capacity for "occasional stooping." (R.at 5.) Therefore, the VE opinions regarding Plaintiff's vocational

limitations are no longer dispositive, because they were based on a hypothetical claimant who had a "complete inability to stoop," rather than a hypothetical claimant who retained an "occasional" ability to stoop.

**C.     The Administrative Law Judge Properly Applied Plaintiff's Age Category**

In his final argument on appeal, Plaintiff alleges that the ALJ violated 20 C.F.R. § 404.1563(b) by applying the age category mechanically in a borderline situation. (Pl.'s Mem. at 29-31.) Section 404.1563(b) explains how the age categories are to be applied:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Plaintiff contends that the ALJ should have applied Grid Rule 202.04 (claimant is limited to light, unskilled work and is at least fifty-five (55) years old with a high school education), which would have resulted in a finding of "disabled." Instead, the ALJ applied Grid Rule 202.13 (claimant is limited to light, unskilled work, and is between fifty (50) and fifty-four (54) years old with a high school education), which resulted in a finding of "not disabled." Plaintiff argues that this was error because he "would have turned 55 less than two months after his date of last insurance." (Pl.'s Mem. at 30-31.)

The argument overlooks two aspects of this case. First, the ALJ's decision is not the final decision of the Commissioner and, therefore, is not the decision to be reviewed by this Court on appeal. *See* Section IV(A)(1) *infra*. Regardless, Plaintiff did not turn fifty-five (55) years old until *after* his DLI. While the regulations provide that the Grid Rules are not to be applied mechanically in a borderline situation, the regulations also state:

> Under title II, a period of disability cannot begin after a worker's disability insured status has expired.   When the person last met the insured status

22

requirement before the date of adjudication, *the oldest age to be considered is the person's age at the date last insured.* In these situations, the person's age at the time of decisionmaking is immaterial.

SSR 83-10 (emphasis added). Plaintiff's fifty-fifth birthday was February 5, 2007 and his DLI was December 31, 2006 — over a month prior. (R. at 20.) Because Plaintiff was fifty-four (54) years old as of his DLI, the ALJ was correct in applying Grid Rule 202.13, which resulted in a finding of "not disabled."

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand (ECF. No. 18) be DENIED; that Defendant's motion for summary judgment (ECF. No. 20) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: April 25, 2012