UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



CLUVERIUS JENKINS, III,

          Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

Civil Action No. 3:10–CV–705

### MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Cluverius Jenkins's[1] Objections to the Magistrate Judge's Report and Recommendation ("R&R"). (ECF No. 26.) Through the Appeals Council ("AC"), the Commissioner of the Social Security Administration ("SSA"), Michael Astrue, denied Jenkins's application for disability benefits based on the determination that Jenkins was not disabled as defined by the Social Security Act, 42 U.S.C. Ch. 7, (the "Act") and applicable regulations. The Magistrate Judge recommends that the Court affirm the SSA's decision, deny Jenkins's motion for summary judgment (ECF No. 16), and grant the Commissioner's motion for summary judgment (ECF No. 19). Jenkins, however, objects to the R&R on two grounds: (1) that he was clearly prejudiced by the AC's change to his residual functioning capacity; and (2) that the hypothetical posed by the Administrative Law Judge ("ALJ") to the vocational expert ("VE") was improper. For the reasons stated below, the Court OVERRULES Jenkins's Objections and ADOPTS the Magistrate Judge's R&R (ECF No. 25).

---

[1] On October 20, 2009, Jenkins died from his medical conditions. (R. at 225.) His widow, Renita H. Jenkins, is properly substituted as the party in the record and pursues this action on his behalf. (R. at 224.)

## BACKGROUND[2]

"'Disability' is the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) (quoting 42 U.S.C. § 423(d)(1)(A)). The Commissioner, through the AC or an ALJ, utilizes a five-step sequential process to determine whether a claimant is disabled and thus eligible for Social Security disability benefits. 20 C.F.R. §§ 404.1520, 416.920. Under the five-step inquiry, the Commissioner considers whether the claimant (1) is performing "substantial gainful activity"; (2) is severely impaired; (3) has an impairment that is at least as severe as one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could continue performing work that he did in the past; and (5) could perform any other job in the national economy. 20 C.F.R. §§ 416.905, 416.920; *see Rogers v. Barnhart*, 216 F. App'x 345, 347-48 (4th Cir. 2007). If, at any step of the analysis, the Commissioner is able to determine that the applicant is disabled, the inquiry must stop. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. *Bowen v. Yuckett*, 482 U.S. 137, 146 n.5 (1987).

Before considering step four of the sequential analysis, the Commissioner must determine the claimant's residual functioning capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e) "RFC is a measurement of the most a claimant can do despite his limitations." *Hines*, 453 F.3d at 562. It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day,

---

[2] The facts of this case are adequately represented in the Magistrate Judge's R&R. The facts recited are those relevant to the disposition of Jenkins's objections.

for 5 days a week, or an equivalent work schedule." *Id.* (quoting Social Security Regulation ("SSR") 96-8p) (emphasis omitted); *see also* SSR 96–9p.

On September 30, 2004, Jenkins filed an initial application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments, alleging that since August 9, 2003, he was impaired due to coronary artery disease, hypertension, obesity, varicose veins in both legs, and residual effects of surgery in the left knee. (R. at 79, 81-82, 97.) The Disability Determination Services ("DDS") arm of the Virginia Department of Rehabilitative Services denied Jenkins's claims initially and on reconsideration. On August 14, 2006, a hearing following Jenkins's written request was held before ALJ Timothy C. Pace ("ALJ Pace"). On October 27, 2006, ALJ Pace found that Jenkins was not disabled under the Act. Relevant to Jenkins's objections, ALJ Pace considered the following: that Jenkins was able to coach football, attend various church activities, and had to elevate his legs three to four times a day for an hour; and for treatment, Jenkins only ingested ibuprofen and wore a compression stocking at night. (R. at 83.) ALJ Pace found that Jenkins had a RFC to perform a full range of light work,[3] with the exception that Jenkins could not "tolerate tasks requiring stooping, squatting, crawling, or kneeling due to his knee problems." (R. at 82.) Based on this RFC, and a finding that there were jobs in the national economy that Jenkins could perform, ALJ Pace concluded that Jenkins was not disabled under the Act. Jenkins did not appeal this decision.

---

[3] The SSA classifies jobs according to the physical exertion required to perform them ranging from "very heavy work" which involves lifting more than 100 pounds, to "sedentary work" which involves lifting no more than 10 pounds. 20 C.F.R. § 404.1567; *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1990). According to the SSA, "light work":

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).

On May 20, 2008, Jenkins filed a second application for DIB claiming that at the onset date of January 1, 2006, he was impaired due to coronary artery disease and varicose veins in both legs. (R. at 94, 97, 282.) As with Jenkins's initial application, his claims were denied by DDS. (R. at 94.) On March 20, 2009, at a hearing before an ALJ, Jenkins's counsel narrowed the applicable timeframe for which Jenkins could be considered for disability to October 28, 2006, to December 31, 2006—essentially, a day after ALJ Pace's decision to the last date Jenkins was insured ("DLI").[4] As such, the relevant time period for purposes of determining whether Jenkins is entitled to benefits is from October 28, 2006 to December 31, 2006. On August 25, 2009, ALJ Drew A. Swank ("ALJ Swank") denied Jenkins's second application for DIB. Specifically relevant, ALJ Swank adopted many of the findings in ALJ Pace's decision including ALJ Pace's RFC determination that Jenkins could perform light work, with the limitation that he could not stoop or bend, noting that Jenkins did not receive any additional treatment between October 28, 2006, and December 31, 2006. (R. at 99.) ALJ Swank relied on the mechanical formula of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to conclude that Jenkins was not disabled. Jenkins appealed this decision.

On September 22, 2009, the AC reviewed ALJ Swank's decision and remanded the case because ALJ Swank's decision did not contain an evaluation of the opinion of Damian Covington, M.D. ("Dr. Covington"), Jenkins's treating physician, and it lacked the opinion of a VE regarding the effect of Jenkins's inability to stoop, crawl, or squat in assessing Jenkins's ability to perform light work. The AC asked the ALJ to, *inter alia*, (1) obtain additional evidence from a medical expert ("ME") to "clarify the nature and severity" of Jenkins's impairments; and (2) VE to clarify the effect of the assessed limitations, such as the inability to stoop, on Jenkins's occupational base which indicates that he could perform light work. (R. at 106-07.)

---

[4] Under the Social Security's DIB program, a claimant must be fully insured at the time of the disability in order to be eligible for benefits. 42 U.S.C. § 423(a) & (c); 20 C.F.R. §§ 404.101(a), 404.131(a).

Following the remand, ALJ Swank scheduled a hearing for December 9, 2009. Prior to this hearing, Jenkins submitted an opinion letter from Dr. Covington dated May 26, 2009, in which Dr. Covington stated that during the time he treated Jenkins—August 2005 to October 2006—Jenkins was only able to stand for less than one hour each day with the requirement that he elevate his lower body. Jenkins also submitted a letter dated November 11, 2009, from VE Dr. Barry Hensley ("VE Hensley") in which VE Hensley addressed the hypothetical of an individual with an RFC for light work with the limitation of a complete inability to stoop. VE Hensley opined that at the light level, there are no jobs in the Dictionary of Occupational Titles ("DOT") that require no stooping because "[a]ll jobs at the light level require at least occasional bending." (R. at 226-27.)

At the hearing on December 9th, ALJ Swank presided and received testimony from VE Robert Lester ("VE Lester"), and ME Dr. Charles E. Cooke ("ME Cooke"). At the hearing, ALJ Swank propounded the following hypothetical to VE Lester:

> I'm going to ask you the following hypothetical, which is of an individual of the same age as claimant, in this case it's before the age of 55, . . . of the same education, work history and transferable skill, if any, as the claimant, with the following RFC: light work in positions that do not require stooping, squatting, crawling or kneeling, with no exposure to concentrated heights, and limited to simple unskilled work.

(R. at 40-41.) VE Lester testified that although most light, unskilled positions require some stooping, based on the DOT, there are three positions—cashier, small products assembly, and retail marker—that do not require stooping. (R. at 45, 48.) To distinguish the light positions which require stooping from those that do not, VE Lester clarified that the key is whether stooping is an essential task and function of the job. VE Lester stated:

> Stooping is something that's done throughout the day, whether you're working or not. The essential tasks and functions of the jobs that we are speaking of, is [stooping] required to do those[?] It is my opinion that yes, sometimes it is in some particular small products assembler jobs. It is not required for all of them. If you think about standing up, making change for somebody, and that's the essential task of [the cashier's] job, taking in money, standing at the cash register or sitting at a cash register, ringing it up on the cash register . . . [w]hether you are standing or sitting, my point is that you are not required to bend at the waist to receive money and ring up things on

5

the cash register and give money back. It doesn't really require [stooping]. That's not an essential task and function of the job.

(R. at 57-58.) VE Lester further testified that for the three positions, the total number of jobs nationally and regionally, respectively, are: (1) Cashier II (1.5 million and 50,000); (2) Small Products Assembler (36,000 and 1,000); and (3) Marker (250,000 and 8,000).[5] (R. at 44.) Further, at the hearing, ME Cooke testified that the medical evidence in the record failed to support Dr. Covington's opinions in his June 2009 letter.

Following the hearing, with ALJ Swank's authorization, Jenkins's counsel propounded interrogatories to VE Lester. (R. at 435-38.) VE Lester opined that the DOT classifications of the listed jobs do not require stooping, squatting, or crawling because such limitations were "not present" in the DOT classifications and Revised Handbook for Analyzing Jobs ("RHAJ"). (R. at 439.) VE Lester stated, however, while these references "all indicate that bending is 'not present' in the positions of Cashier II, Small Products Assembler and Marker, following my labor market research, it is my opinion that [ ] '[s]ome stooping (bending at the waist) is required to do almost any kind of work[, and] [o]nly occasional stooping and crouching is required to perform most sedentary of work.'" (R. at 440.) VE Lester further stated, "According to employers with whom I spoke, without exception, all indicated that they could not visualize anyone performing the essential tasks and functions of the jobs without some ability to bend at the waist." (R. at 440.)

Jenkins also submitted another letter from VE Hensley dated December 22, 2009. There, VE Hensley opined that "it is impossible to perform as a cashier, assembler, and marker without bending from the waist." (R. at 432.) VE Hensley further stated that the job descriptions in the DOT were "antiquated . . . [and] no longer viable to use for functional analysis purposes." (R. at 432.)

On March 26, 2010, after considering additional evidence received ALJ Swank again denied

---

[5] These numbers were reduced based on VE Lester's opinion that in his experience, some jobs in these three positions require some stooping. (R. at 51.)

Jenkins's claim for DIB. ALJ Swank found that Jenkins was severely impaired from coronary artery disease, obesity, varicose veins of the bilateral lower extremities and osteoarthritis of the left knee and these impairments resulted in an RFC to perform light work, except that he could not "stoop, squat, crawl and/or kneel." (R. at 117.) ALJ Swank still found that Jenkins was not disabled because there were jobs in the national economy that he could perform. In reaching this conclusion, ALJ Swank did not rely on the Medical-Vocational Guidelines; instead, ALJ Swank relied on VE Lester's testimony that Jenkins could perform work as a cashier, small parts assembler, or marker. (*Id.*) Jenkins appealed this decision to the AC.

On May 7, 2010, the AC sent a notice to Jenkins informing him that his request for review had been granted. (R. at 129-33.) The notice explained that the AC planned to adopt ALJ Swank's findings, with the exception that the AC found that Jenkins had the occasional ability to stoop because ALJ Swank's limitation of a complete inability to stoop was not supported by the evidence in the record. (R. at 131.) The notice also informed Jenkins that he had an opportunity to submit additional evidence or request a hearing within thirty days. Jenkins did not submit additional evidence or request a hearing. On September 7, 2010, the AC entered its final decision. The AC adopted ALJ Swank's findings of steps one through three of the sequential analysis—"specifically, that [Jenkins] has not engaged in substantial gainful activity since October 28, 2006 and that [he] has severe impairment   that do not meet or equal the severity of impairments in the Listing of Impairments [in 20 C.F.R. Part 404, Subpart P, Appendix 1]." (R. at 5.) The AC, however, modified ALJ Swank's RFC finding by stating that Jenkins "retained at least an occasional ability to stoop." (R. at 5.) The AC also found that at step four, Jenkins was unable to perform his past relevant work, and at step five, the AC applied the Medical-Vocation Guidelines and affirmed ALJ Swank's finding that there were significant jobs in the national economy that Jenkins could have performed on and prior to his DLI, including positions such as a cashier, small products assembler, and retail marker. (R. at 6.) The AC, thus, concluded that

7

Jenkins was not disabled under the Act. (R. at 8.)

Jenkins appealed the AC's decision on several grounds, including that (1) he was denied due process of law by the AC's sudden change to his RFC; and (2) ALJ Swank committed legal error by failing to accept the testimony of two VE's that there were no jobs in the local or national economy that a person with limitations of bending or stooping could perform. (Mem. of Point & Authorities in Supp. of Pl.'s Mot. Summ. J. ("Pl.'s Mem.") 21, 27, ECF No. 18.) In the R&R, the Magistrate Judge recommends that ALJ's decision be affirmed, finding that: (1) Jenkins's due process rights were not violated because he had an opportunity to be heard before the AC entered its final decision changing the RFC—a change supported by substantial evidence; and (2) any error made by ALJ Swank is no longer relevant because that decision was superseded by the AC's final decision, and the VE's testimony which was based on a faulty hypothetical was not dispositive. Jenkins filed the two present objections to the R&R.

## STANDARD OF REVIEW

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but it must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hines*, 453 F.3d at 561. The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2011). Thus, a finding is supported by "substantial evidence" if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). And, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* In determining whether a decision satisfies that standard, the Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its judgment for the Commissioner's findings. *Mastro*, 270 F.3d at 176.

**ANALYSIS**[6]

Jenkins raises two objections: First, Jenkins contends that he was "clearly prejudiced" by the AC's change to his RFC. (Pl.'s Objections 1, ECF No. 26). Second, Jenkins contends that the hypothetical posed to the VEs was improper. Each objection is addressed in turn.

**A. Clear Prejudice Based on the AC's Change to Jenkins's RFC**

Jenkins contends that he is clearly prejudiced by the AC's change to his RFC because: (1) he had no opportunity to cross examine the VEs with regard to the changed RFC; and (2) the change to his RFC is "contrary to all evidence in the record." (Pl.'s Objections 2, ECF No. 26.) The Court is not persuaded. Without deciding whether Jenkins had a property interest protectable under the Constitution of the United States, *see Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981) (addressing due process claim without deciding whether a social security applicant has a protected property interest under the Constitution), as the Magistrate Judge explains, Jenkins was not deprived due process of the law because prior to the entry of the AC's final decision, the AC notified Jenkins of its intent to change the RFC and provided him with a thirty-day timeframe within which he could submit new evidence or request a hearing. "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970). Jenkins clearly had this opportunity but failed to avail himself of it and cannot now argue he was deprived of due process of the law.

Moreover, the AC's change to Jenkins's RFC is not contrary to the evidence in the record; rather, it is supported by substantial evidence in the record. As the Magistrate Judge specifies, the

---

[6] The Court notes that the AC's decision is the final decision of the Commissioner, and is the decision that is subject to judicial review by this Court. *See* 20 C.F.R. § 404.987; *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The Court also notes that the decisions of the ALJs and the AC were unfavorable to Jenkins. Specifically, the ALJs found that Jenkins was not disabled under the Act because he could perform light work *except* work that involved stooping. Whereas, the AC found that Jenkins was not disabled because he could perform light work *including* work that involved occasional stooping.

record indicates that the only treatment notes for Jenkins in the record, on or before the last date on which Jenkins was insured, came from Dr. Covington. The treatment notes show that on or around September 6, 2005, Jenkins had a "*trace* of [non-pitting] edema," and as of June 28, 2006, Jenkins had "[n]o cyanosis, clubbing, or edema" but "*minimal* osteoarthritis." (R. at 469, 479 (emphasis added).) Following his last visit to Dr. Covington on October 31, 2006, (R. at 476), Jenkins did not receive treatment until April 2008—more than eighteen months after the date he was last insured. (R. at 458.)

Furthermore, the consultative examination report completed by Nancy Powell, M.D. on July 15, 2008, indicates that Jenkins had normal range of motion of cervical and lumbar spine, hips, knees and ankles. (R. at 490.) Dr. Powell found that Jenkins had "trace edema in his ankles and feet," "severe varicose veins on his lower extremities bilaterally," but did not have cyanosis or clubbing. (R. at 490.) Dr. Powell assessed that Jenkins did not use assistive devices, could sit for six hours, "stand or walk about [six] hours with more frequent breaks because of shortness of breath and severe varicose veins," and "lift or carry 20 pounds occasionally and 10 pounds frequently." (R. at 496.) Additionally, at the hearing before ALJ Swank on December 9th, ME Cooke testified that he reviewed all of Jenkins's medical records and found that prior to December 31, 2006, Jenkins could not have met or equaled any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) On these bases, the Court finds that the record substantially supports the AC's finding that Jenkins had the occasional ability to stoop.

Jenkins contends that the record, particularly the opinion of his treating physician, Dr. Covington, support the contra conclusion that Jenkins had a complete inability to stoop. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Here, Dr. Covington's opinion letter dated May 26, 2009, is properly discredited by the AC because it is unsupported by clinical evidence and is inconsistent with other substantial evidence. In

10

the opinion letter, Dr. Covington stated that during the time he treated Jenkins—that is, from August

2005 to October 2006—Jenkins "suffered *chronic* lower extremity edema with varicose veins, left knee

pain, hypertension. . . . This condition was treated by diuretics and behavior modifications (elevating

legs as much as possible). In addition, his knee pain did not respond to nonsterodial

anti-inflammatories or muscle relaxers." (R. at 759 (emphasis added).) Dr. Covington then opined that

during the time of treatment, Jenkins:

> would have been limited to a job where he could primarily sit, requiring intermittent
> elevation of lower extremity and standing less tha[n] 1 hour during the day. Standing
> for any length of time would have been difficult because of his lower extremity edema
> with varicose veins and his comorbid arthritis of his knee. At the time we treated him,
> it appeared his condition was declining.

(R. at 759.) Dr. Covington's notes made contemporaneously with Jenkins's treatment, however, do

not support this conclusion. For example, the June 1, 2006 treatment note indicates that Jenkins'

"[l]eft knee is *mildly* edematous[,] . . . [and] tender to palpation[,] [but] [n]ot warm to touch." (R. at 483

(emphasis added).) The note also indicates that Jenkins had arthralgia, particularly in his left knee. (*Id.*)

Jenkins was prescribed anti-inflammatory, Ibuprofen, and muscle relaxer, Robaxin, and advised to

follow up with Dr. Covington within one month. The June 28, 2006 treatment note indicates that at

the time, Jenkins had "left knee pain with weakness," "minimal osteoarthritis," but "[n]o cyanosis,

clubbing, or edema." (R. at 479.) Jenkins continued treatment by taking the prior prescribed Ibuprofen

and Robaxin. (*Id.*) The October 5, 2006 treatment note indicates that Jenkins had "[n]o cyanosis,

clubbing, or edema," but based on his history of arthralgia, was asked to continue taking Ibuprofen

and Robaxin. (R. at 477.)[7]

As noted in the AC's notice of decision, Dr. Covington's treatment notes "provide no

indication that Mr. Jenkins complained of or experienced any on-going pain or functional limitations

---

[7] In Jenkins's last visit on October 31, 2006, Dr. Covington made no independent recorded
observations but noted that Jenkins wanted a referral to an orthopedist. (R. at 476.)

associated with a spinal, right knee or bilateral hip impairment" and "contain no indication that he recommended that Mr. Jenkins periodically elevate his legs, nor do his records provide any indication that he recommended the sort of limited walking described in the letter." (R. at 130.) Thus, Dr. Covington's subsequent opinion written three years after the time period during which he treated Jenkins is unsupported by clinical evidence and is inconsistent with other substantial evidence, specifically, the contemporaneous treatment notes. Further, ME Cooke confirmed that Dr. Covington's opinion was unsupported by the medical evidence in the record. (R. at 31-32.) Specifically, ME Cooke testified that based on the evidence in the record, the opinion that Jenkins would be limited to standing less than one hour a day "would be considered a severe restriction [because] his x-rays describe minimal osteoarthritis, and edema is [ ] trace or very little." (R. at 32.) On this basis, the AC properly concluded that "no clinical findings made by a medically acceptable source within 18 months after the date last insured are consistent with a finding that Mr. Jenkins had no ability to stoop." (R. at 131.) Therefore, the Court overrules Jenkins's first objection.

**B. Improper Hypothetical to the VEs**

It appears that Jenkins's objection with respect to the hypothetical is three-fold: (1) that VEs's responses are based a faulty hypothetical which contained the limitation of a complete inability to stoop; (2) the AC did not propose a hypothetical based on the RFC with the limitation of a partial inability to stoop to a VE; and (3) Jenkins was not afforded the opportunity to cross-examine the VEs with respect to the changed RFC. Preliminarily, similar to the Court's position above, the objection regarding an opportunity to cross-examine the VEs with respect to the new RFC is futile because prior to the entry of the AC's final decision, the AC provided Jenkins an opportunity to submit additional evidence or request a hearing, but Jenkins failed to do so.

A finding of no disability based on a VE's response to a faulty hypothetical question from the ALJ is not supported by substantial evidence. *Burns v. Barnhart*, 312 F.3d 113, 123-24 (3d Cir. 2002).

12

Thus, Jenkins contends that the hypothetical posed to the VEs which was based on the old RFC with the limitation of a complete, as opposed to partial, inability to stoop is faulty and not supported by substantial evidence. Jenkins's argument must be rejected for at least two reasons: First, as the Magistrate Judge points out, the AC's final decision is the subject of this judicial review and not the decisions of the ALJs. Second, by narrowing the RFC limitation from a complete inability to stoop to an occasional inability to stoop, the AC implicitly broadened the universe of jobs available to Jenkins. That is, the VEs testimonies regarding the availability of jobs for an individual with a complete inability to stoop does not have an inverse effect on the availability of jobs for an individual with an occasional ability to stoop.

The Court similarly rejects Jenkins's argument that the AC failed to propound a proper hypothetical to a VE based on the new RFC. There is no requirement that the AC propose a new hypothetical to a VE when it undertakes to change the RFC where it is substantially supported by the evidence in the record. *See McLamore v. Weinberger*, 538 F.2d 572, 575 (4th Cir. 1978) (holding that although "testimony of a vocational expert [is] required in most disability cases to meet the [Commissioner]'s affirmative burden," there is no "blanket requirement that a vocational expert appear to supply particularized proof of the claimant's employability.") Once the AC determines a claimant's RFC, he may use the Medical-Vocational Guidelines ("Grids") to determine the claimant's level of disability and potential for employment. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Particularly, where a claimant suffers only exertional limitations, the AC must consult the Grids to determine the claimant's eligibility for benefits. *Walker*, 889 F.2d at 49; *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Here, Jenkins's RFC was based purely on exertional limitations, and as such, the testimony of a VE is not required. Accordingly, the Court overrules Jenkins's second objection.

## CONCLUSION

Having reviewed the R&R and the AC's decision, the Court finds that the AC relied on

substantial evidence and applied correct legal standards in reaching its decision that Jenkins is not disabled as defined by the Act and applicable regulations. Therefore, the Court OVERRULES the Jenkins's Objections and ADOPTS the Magistrate Judge's R&R.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall accompany.

/s/
Henry E. Hudson
**United States District Judge**

ENTERED this **2&** day of August 2012.

14